[Nos. F067609, F068074. Fifth Dist. Feb. 6, 2015.]

GREGORIO LOPEZ et al., Plaintiffs and Appellants, v.
ASBURY FRESNO IMPORTS, LLC, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., III., and V. of the Discussion.

**COUNSEL**

Pritchard and Kay and M. Gregg McKerroll for Plaintiffs and Appellants.

Dowling Aaron Incorporated, Lynne Thaxter Brown and James D. Burnside for Defendant and Respondent.

**OPINION**

**DETJEN, J.**—Plaintiffs appeal from the judgment entered against them after a court trial in an action alleging various violations of consumer protection statutes. We conclude the trial court correctly determined the alleged violations did not constitute violations of the consumer protection statutes invoked, or plaintiffs failed to comply with the statutory prerequisites to recovery. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and appellants, Gregorio and Dominga Lopez, were born in Mexico and have lived in the United States since 1988. They do not speak or read English well. When he was about 11 years old, their son David began to help Gregorio with his farm labor contracting business, translating for him and setting up deals.[1] Plaintiffs told David they would buy him a car because of his help with the business, so, when David was 16, they all went to Mercedes Benz of Fresno, a Mercedes Benz dealership then owned by defendant and respondent, Asbury Fresno Imports, LLC, to look at a car David liked. They spoke with a Spanish-speaking salesman. The cars the dealership had on the lot did not have the navigation system David wanted; the salesman told the Lopezes the car David wanted would have to be ordered from out of state and it would take a couple of weeks. On March 31,

---

[1] For the sake of clarity, we refer to members of the Lopez family by their first names. No disrespect is intended.

2007, plaintiffs learned the car had arrived at the dealership, but the Spanish-speaking salesman was not available. They called David to meet them at the dealership to interpret.

Plaintiffs spoke with a salesman, Vic, who did not speak Spanish; David translated for his parents. Plaintiffs filled out a credit application. Vic took the credit application to the sales manager, who obtained credit reports for both plaintiffs. David explained the credit reports to his parents. The sales manager then prepared a document referred to as a "read-back" or "four-square," which set out the price and monthly payments for the vehicle based on an interest rate the sales manager estimated plaintiffs would qualify for, considering their credit scores and other information. Because of plaintiffs' weak credit scores and other factors, the sales manager used an interest rate of approximately 20 percent. The salesman took the read-back to plaintiffs and plaintiffs agreed to a price of $56,000 for the vehicle, with estimated monthly payments of $1,322.80 for 72 months. Both plaintiffs signed the read-back.

The sales manager prepared the paperwork for the sale and the salesman then took the Lopezes to the finance department. David and Gregorio testified the finance manager said he had a better deal for them; he could get them a lower monthly payment because the bank would give them a better interest rate if they purchased additional items. They purchased additional items, including a gap policy designed to pay off any remaining loan balance if the car was totaled and the automobile insurance was not sufficient to entirely pay off the loan. The finance manager did not recall the specific transaction with plaintiffs, but testified he routinely presented buyers with a menu of options to purchase, explained each optional product, and explained what the base payment would be without any optional products and what it would be after the addition of any optional products the buyer chose to include. The menu prepared for plaintiffs included the monthly payment at 10.69 percent interest with and without packages of options. After plaintiffs chose their options, the finance manager printed out the paperwork and had plaintiffs sign it; David did not translate the documents.

Approximately two months after the purchase of the car, David reviewed the purchase documents and realized the purchase price, including all optional items, totaled approximately $72,000. He told his parents, who thought the amount was high, but said it was a really nice car. They took no steps at that time to rescind or otherwise object to the contract.

In 2009, the car was damaged beyond repair in an accident. Plaintiffs' automobile insurance paid the lender approximately $37,000. That left an unpaid loan balance of approximately $9,000. When plaintiffs made a claim on the gap policy, they were told the policy had been canceled. David

contacted the dealership, which had no record of any cancellation. Plaintiffs' attorney sent a letter to defendant demanding defendant take certain actions to remedy alleged violations of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.)[2] within 30 days. Defendant attempted to obtain further information to resolve the matter, but plaintiffs filed suit 10 days after the letter was sent. Defendant subsequently paid the balance then remaining on the loan.

Plaintiffs' fourth amended complaint contains seven causes of action: intentional misrepresentation, negligent misrepresentation, concealment, violation of the CLRA, violation of the Automobile Sales Finance Act (ASFA; § 2981 et seq.), violation of section 1632, and violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). After a court trial, judgment was entered in favor of defendant. Defendant then moved for and was awarded its attorney fees incurred in defending the action, pursuant to provisions of the ASFA. Plaintiffs' appeals from the judgment and from the posttrial order awarding attorney fees have been consolidated.

## DISCUSSION

### I.–III.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV.

### SECTION 1632

In its statement of decision, the trial court found in favor of defendant on plaintiffs' claim of violation of section 1632. Section 1632 provides, in part: "Any person engaged in a trade or business who negotiates primarily in Spanish . . . , orally or in writing, in the course of entering into [a conditional sale contract governed by the provisions of the ASFA], shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement . . . ." (Id., subd. (b).) Section 1632 contains an exception: "This section does not apply to any person engaged in

---

[2] All further statutory references are to the Civil Code, unless otherwise indicated.

[*]See footnote, ante, page 71.

a trade or business who negotiates primarily in a language other than English, as described by subdivision (b), if the party with whom he or she is negotiating is a buyer of goods or services . . . , and the party negotiates the terms of the contract, lease, or other obligation through his or her own interpreter. [¶] As used in this subdivision, 'his or her own interpreter' means a person, not a minor, able to speak fluently and read with full understanding both the English language and any of the languages specified in subdivision (b) in which the contract or agreement was negotiated, and who is not employed by, or whose service is made available through, the person engaged in the trade or business." (*Id.*, subd. (h).)

Plaintiffs contend defendant violated this provision by failing to furnish plaintiffs with a Spanish translation of their purchase contract, which they assert was primarily negotiated between plaintiffs and defendant in Spanish. They maintain the exception for a customer using his or her own interpreter does not apply, because the interpreter plaintiffs provided, their son David, was a minor.

The trial court found in favor of defendant on this issue, reasoning that David was the primary negotiator on behalf of plaintiffs, and he negotiated with the English-speaking representatives of defendant in English. Thus, section 1632 was not applicable because the transaction was not negotiated primarily in Spanish. We agree that the contract was not one negotiated primarily in Spanish and therefore was not governed by section 1632.

■ In construing a statute, " 'we look first to the language of the statute, giving effect to its "plain meaning." ' [Citations.]" (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) ■ By its plain terms, the requirement that the customer be provided with a copy of a foreign language translation of the contract applies only when the "person engaged in a trade or business . . . negotiates primarily in Spanish . . . ." (§ 1632, subd. (b).) In this case, the person engaged in a trade or business was defendant. On plaintiffs' first visit to the dealership, they spoke with a Spanish-speaking salesman and their conversation was in Spanish. It is undisputed, however, that there was no negotiation of the sale of the vehicle on that occasion. Plaintiffs looked at the cars available; David expressed interest in a particular model, but it was not immediately available with the navigation system David wanted. The salesman told plaintiffs the car, equipped as David wanted, was rare, with only two available in the country; it would have to be ordered from out of state, which would take a couple of weeks. There was little or no discussion of price or other terms at that time.

When the car arrived at defendant's dealership, the Spanish-speaking salesman was unavailable. Plaintiffs negotiated the purchase of the vehicle

with a salesman and a finance manager who did not speak Spanish. Defendant's representatives negotiated in English. Plaintiffs negotiated in English, through David.

■ Section 1632 contemplates a situation in which both parties are using the foreign language in negotiating the transaction. In that situation, the statute prevents the seller from suddenly springing on the buyer a contract written in English and expecting the buyer to sign it without reviewing its terms. The seller is required to provide a translation of the contract, in the language used to negotiate its terms, for the buyer to review prior to signing the English version.

■ We do not believe the exception in section 1632, subdivision (h), for a party who brings his or her own interpreter, applies when the seller negotiates in English and the buyer negotiates in English through the interpreter, as plaintiffs contend. The statute as a whole applies only when the "person engaged in a trade or business," in this case the seller, negotiates primarily in a language other than English. If the buyer brings an interpreter who negotiates with the seller in English, then the seller does not negotiate primarily in the foreign language. As we interpret the statute, the exception in section 1632, subdivision (h), applies when the parties negotiate in the foreign language, but the buyer is accompanied by an interpreter who can review the written contract in English and advise the buyer whether it accurately reflects the terms agreed to during negotiations in the foreign language. In that situation, the statute does not require the "person engaged in a trade or business" to provide the customer with whom it negotiates with a copy of the contract translated into the foreign language.

■ Defendant did not primarily negotiate the sale of the vehicle to plaintiffs in Spanish. During negotiations, the parties primarily communicated using English. Accordingly, section 1632, subdivision (b), did not require defendant to provide plaintiffs with a Spanish translation of the contract. The trial court correctly concluded plaintiffs failed to meet their burden of establishing a statutory violation by defendant.

## V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 71.

## DISPOSITION

The judgment is affirmed. Defendant is entitled to its costs on appeal.

Kane, Acting P. J., and Peña, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 13, 2015, S225139.