Filed 3/27/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| REFUGIO VALDEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SEIDNER-MILLER, INC.,<br><br>    Defendant and Respondent. | B281003<br><br>(Los Angeles County<br>Super. Ct. No. BC608104) |

APPEAL from the judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Reversed and remanded.

Rosner, Barry & Babbitt, Hallen D. Rosner, Michelle A. Cook; Law Office of David Valdez, Jr., and David Valdez, Jr., for Plaintiff and Appellant.

Law Offices of Morton Minikes, Morton Minikes; Madrid Law Firm, Eduardo M. Madrid and Erica L. Madrid for Defendant and Respondent.

_____

Refugio Valdez alleged Seidner-Miller, Inc. (Seidner), violated the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), and Civil Code section 1632[1] (requiring translation of certain contracts), and committed fraud in connection with Seidner's lease of a vehicle to Valdez and his wife. Valdez appeals from a judgment entered following the trial court's grant of summary judgment in favor of Seidner. Relying on *Benson v. Southern California Auto Sales, Inc.* (2015) 239 Cal.App.4th 1198, 1205 (*Benson*), the trial court ruled Seidner made a timely and "appropriate" offer to correct the alleged CLRA violations, barring Valdez's claim under the CLRA for damages and injunctive relief, as well as his section 1632, UCL, and fraud claims, because the claims were "inextricably intertwined" and based on the same conduct.

On appeal, Valdez contends Seidner's correction offer was not timely or appropriate under the CLRA. Although we conclude Seidner's correction offer was timely, it was not appropriate. To the extent *Benson* reached a contrary conclusion, we disagree with it. Where a business conditions its offer to remedy a violation of the CLRA on the consumer waiving his or her right to injunctive relief and remedies under other statutes and common law, the offer is not an appropriate correction offer as contemplated by section 1782, subdivision (b), and does not bar a lawsuit by the consumer.[2] Neither can the business demand as

---

[1] Further statutory references are to the Civil Code unless otherwise indicated.

[2] Section 1782, subdivision (b), provides that a consumer may not bring an "action for damages" for violation of the CLRA if, after giving the business 30 days' advance notice of the alleged

part of its correction offer that the consumer consent to additional settlement terms unrelated to the compensation necessary to make the consumer whole.  We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Valdez's CLRA Notice*

On August 11, 2015 Valdez sent Seidner a "notice of rescission and demand for rectification" under the CLRA.  The CLRA notice alleged on August 15, 2014 Valdez and his wife, Bertha Valdez, entered into an agreement with Seidner, doing business as Toyota of Glendora, to lease a 2014 Toyota Camry.  Valdez wanted to purchase the car, but a Seidner salesperson told Valdez and his wife they did not have sufficient credit to qualify for a purchase.  The salesperson represented they could lease the car and refinance the contract after 10 payments.  The salesperson also stated GAP insurance[3] and an alarm were

---

violations, the business provides a timely and "appropriate correction, repair, replacement, or other remedy."

[3]  "'Guaranteed asset protection' (GAP) insurance means insurance in which a person agrees to indemnify a vehicle purchaser or lessee for some or all of the amount owed on the vehicle at the time of an unrecovered theft or total loss, after credit for money received from the purchaser's or lessee's physical damage insurer, pursuant to the terms of a loan, lease agreement, or conditional sales contract used to purchase or lease the vehicle."  (Ins. Code., § 1758.992, subd. (h)(1).)  Under California law, lease agreements must include a notice that "'[o]ptional coverage for the GAP amount may be offered for an additional price.'"  (Civ. Code, § 2985.8, subd. (j).)

3

required by law to be included in the lease agreement. The negotiations were conducted in Spanish, but Seidner did not provide Valdez and his wife a Spanish translation of the lease agreement.

When Valdez returned to the dealership approximately 10 months later, he learned he could not refinance the car at the initial price. Rather, the purchase would cost more than the vehicle's price under the lease. Moreover, Valdez applied for and was denied credit for refinancing by four banks. The CLRA notice alleged Seidner's actions violated the CLRA and the UCL, and constituted fraud.

The CLRA notice sought rescission of the transaction; removal of the transaction from Valdez's credit report; a refund of $1,500 for the down payment, $4,626 for the monthly payments, and $1,500 for insurance; and payment of $2,750 for attorney's fees and costs. The CLRA notice also requested Seidner "[i]dentify and make whole all similarly situated consumers." The CLRA notice stated Seidner's response must be in writing and sent within 30 days to Valdez's attorney.

B.    *Seidner's Settlement Offer*

On September 14, 2015 Seidner's attorney, Andrew Stearns, sent an e-mail to Valdez's attorney, David Valdez, with an attached draft "settlement agreement and release of claims." Under the draft settlement agreement, Seidner denied all allegations in Valdez's CLRA notice. Seidner agreed to pay off the outstanding loan balance, pay $5,126 to reimburse the down payment and monthly payments,[4] and $2,750 for attorney's fees

---

[4]    Although Valdez's CLRA notice sought $1,500 for the down payment, it is undisputed Valdez only paid $500.

4

and costs within 10 days after surrender of the vehicle. The draft settlement agreement required Valdez to return the vehicle "without damage or vandalism, save normal wear and tear," and allowed Seidner to void the settlement agreement if it determined the vehicle was "in unacceptable condition."

The draft settlement agreement required the parties to keep confidential the facts relating to Valdez's CLRA notice and the terms of the agreement. It also contained a release of all known and unknown claims and a covenant not to sue. In addition, the draft agreement provided Valdez would dismiss any actions he had filed with prejudice within five days of receipt of Seidner's consideration.

C.     *The Settlement Negotiations*

The parties engaged in settlement negotiations through their attorneys from September to early December 2015. During the negotiations, Valdez disclosed the vehicle had been in an accident in October 2014 and the repair costs were approximately $3,300. According to Seidner, the vehicle history report showed the vehicle was also in an accident on July 6, 2015.

On October 9, 2015 Stearns sent a letter to David Valdez confirming the parties had agreed to "all items except the manner in which the vehicle was to be surrendered." Seidner requested inspection of the vehicle before it would provide Valdez with the settlement funds. David Valdez responded that "making the settlement subject to an inspection is . . . not acceptable." He added in a followup e-mail, "There is no way this agreement can be based upon your client's subjective review of the car's condition."

5

Stearns responded that Seidner was prepared to remove the covenant not to sue language and confidentiality provision, but not the requirement the vehicle be inspected prior to release of the settlement funds. Although Valdez indicated he would agree to an inspection if Seidner paid the costs of his attorney and expert to be present, Seidner did not agree to this modification. Valdez did not respond to Seidner's final settlement letter sent on December 4, 2015, which reiterated the inspection requirement.

D.    *The Complaint*

On January 22, 2016 Valdez filed a complaint against Seidner and Toyota Motor Credit Corporation, alleging causes of action for violations of the CLRA, section 1632, and the UCL, and for fraud. Valdez alleged Seidner violated section 1632 because the negotiations were conducted in Spanish, but Seidner did not provide him with a Spanish translation of the lease. He sought rescission of the lease, restitution, and attorney's fees and costs pursuant to the attorney's fees provision in the lease.

Valdez also alleged violations of the CLRA based on Seidner's failure to provide a Spanish translation and specified misrepresentations, including that Valdez could return to Seidner in 10 months to refinance at the initial price and Valdez was required to pay for GAP insurance and an alarm. According to the complaint, Seidner "failed to provide or offer a reasonable remedy within thirty days of receiving the [CLRA notice]." Valdez sought $15,342.50 in damages under the lease and unspecified damages for emotional distress (§ 1780, subd. (a)(1)); punitive damages (§ 1780, subd. (a)(4)); rescission; "injunctive relief prohibiting [Seidner] from entering into lease agreements

6

without providing appropriate translations . . . when negotiations are conducted primarily in a language other than English"; other relief deemed proper (§ 1780, subd. (a)(5)); and attorney's fees and costs (§ 1780, subd. (e)).

Valdez further alleged Seidner's business practices violated the UCL based on the CLRA and section 1632 violations. He sought rescission of the lease, restitution, and injunctive relief (Bus. & Prof. Code, § 17203), as well as attorney's fees and costs under the lease. Finally, Valdez alleged a fraud claim based on the same alleged misrepresentations, including that Seidner "made the promise of refinancing the [lease] without any intention of performing" and "willfully deceived [Valdez] with the intent to induce him to enter into the [lease]." Valdez alleged he reasonably relied on the representations and would not have signed the lease but for the representations. He sought $15,342.50 in damages, rescission, restitution, punitive damages under section 3294, and attorney's fees and costs under the lease.

E.    *Seidner's Motion for Summary Judgment*

On September 14, 2016 Seidner filed a motion for summary judgment, or in the alternative, summary adjudication.[5] Seidner argued Valdez's lawsuit was barred under section 1782, subdivision (b), because Seidner timely offered an appropriate correction, including rescission of the lease, reimbursement of the money paid by Valdez, and payoff of the lease to the lender, which would make Valdez whole. Seidner acknowledged its offer

---

[5]    Although Seidner in its notice sought summary adjudication, it did not seek to adjudicate specific causes of action, instead arguing that its offer of correction barred the entire action.

was subject to "the vehicle being returned in the same condition as when it was leased to [Valdez]," allowing for reasonable wear and tear.

In his opposition, Valdez argued Seidner did not offer a remedy within 30 days of receiving the CLRA prelitigation notice, and the remedy it offered was not appropriate. Valdez asserted an appropriate remedy under section 1782 was only a defense to a claim for damages under the CLRA, not a claim for rescission under the CLRA,[6] violations of section 1632 or the UCL, or fraud. Valdez also argued Seidner's additional terms, including the confidentiality provision and its unilateral right to void the agreement based on its subjective assessment of the vehicle condition, rendered the correction offer illusory.

Seidner responded in its reply that the offer of correction was timely because Seidner received the CLRA notice on August 13, 2015, and the 30th day following receipt of the notice fell on September 12, 2015, which was a Saturday. Thus, under Code of Civil Procedure section 12a, subdivision (a), Seidner's time to respond was extended to the next day that was not a "holiday," which was Monday, September 14, 2015. Seidner presented evidence it e-mailed David Valdez a proposed settlement agreement on that date.

---

[6] The CLRA does not specifically provide for rescission as a remedy for a violation, instead referring generally to "other relief deemed proper." (§ 1780, subd. (a)(5).) In his opposition Valdez referred to his right to rescission under the CLRA, but at the hearing David Valdez also argued Valdez's right to obtain injunctive relief without prelitigation notice.

F.      *The Summary Judgment Ruling and Judgment*

At the January 23, 2017 hearing, the trial court heard argument on whether the correction offer was timely and appropriate, then took the matter under submission.  On January 25 the trial court granted Seidner's motion for summary judgment.[7]  The January 25 minute order incorporated the final ruling purportedly filed on the same date; however, no final ruling was filed.

On February 21, 2017 the trial court signed an order for entry of summary judgment.[8]  The order concluded Seidner made a timely and appropriate offer of correction under the CLRA.  The order found that "[b]ecause [Seidner], in effect, offered to undo the entire transaction and pay [Valdez] a reasonable sum, [Seidner's] offer was a reasonable and appropriate offer of correction as a matter of law.  [¶]  [Valdez's] cause of action under the CLRA fails because [Seidner] timely offered an appropriate correction, repair, replacement, or remedy, and the offer included a settlement, release of all claims, and rescission of the entire lease agreement, with appropriate restitution."  Relying on *Benson, supra*, 239 Cal.App.4th at page 1205, the order stated Valdez's non-CLRA causes of action were "in essence, covered and succumbed by the CLRA in that they are 'inextricably intertwined' with the CLRA claim and based on the same

---

[7]     The trial court denied the motion for summary judgment without prejudice as to Toyota Motor Credit Corporation, which had filed a joinder in Seidner's motion, because Toyota did not include a separate statement or any evidence in support of its joinder.

[8]     The order was signed by Judge Robert B. Broadbelt; however, Judge Hammock signed the final judgment.

conduct," and Seidner offered an appropriate correction including settlement and release of all claims. The order concluded, "Therefore, all of [Valdez's] non-CLRA causes of action also fail because no cause of action for damages may be maintained if a timely and appropriate correction was offered (. . . § 1782(b))."

On February 23, 2017 Valdez filed a notice of appeal of the February 21, 2017 order. However, the trial court did not enter the judgment until March 28, 2017.[9] We denied as moot Seidner's motion to dismiss the appeal in light of entry of the judgment. We consider Valdez's premature notice of appeal as a valid "notice of appeal filed after judgment is rendered but before it is entered," and treat the notice as filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(1).)

## DISCUSSION

A. *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1085.) A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield*

---

[9] On our own motion we augment the record to include the March 28, 2017 "judgment by court under CCP § 437c." (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

*Co.* (2001) 25 Cal.4th 826, 853; *Gund v. County of Trinity* (2018) 24 Cal.App.5th 185, 193 [defendant has burden of showing worker's compensation was complete defense to lawsuit]; *Drexler v. Petersen* (2016) 4 Cal.App.5th 1181, 1188 ["'A defendant has the initial burden to show that undisputed facts support summary judgment based on the application of an affirmative defense.'"].)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Gund*, at p. 193.)

We independently review the trial court's grant of summary judgment, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)  "'"We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton*, at p. 347; accord, *Wilson*, at p. 717.)

Likewise, "[w]e review questions of statutory construction de novo.  Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose.  [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent.  [Citation.]' [Citation.]  We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results.  [Citation.]  If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as legislative history to facilitate our interpretative analysis." (*California Building Industry Assn. v. State Water Resources*

11

*Control Bd.* (2018) 4 Cal.5th 1032, 1041; accord, *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089.)[10]

B.    *The CLRA*

The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer," including, as alleged by Valdez:  "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . .  [¶]  . . . [¶]  (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.  [¶]  . . . [¶]  (17) Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to

---

[10]    Seidner contends the trial court's finding the settlement offer was an appropriate correction offer is reviewed for an abuse of discretion, relying on the statement in *Benson* that "the determination of appropriateness of a correction offer under the CLRA should be left to the trial court's discretion." (*Benson, supra*, 239 Cal.App.4th at p. 1207.)  But as Seidner acknowledges, *Benson* involved an appeal from an order denying the plaintiff's request for attorney's fees and costs, not an order granting summary judgment.  Further, although a trial court has discretion to determine whether a correction offer makes a plaintiff whole, we review de novo the legal questions whether a correction offer made following a weekend is timely and whether an appropriate correction offer can require release of claims other than a CLRA damage claim and compliance with other settlement terms.

occur subsequent to the consummation of the transaction.  [¶] (18)  Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer."  (§ 1770, subd. (a).)[11]

"The Legislature enacted the CLRA 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' (. . . § 1760.)  'To promote' these purposes, the Legislature directed that the CLRA 'be liberally construed and applied.' (*Ibid.*)"  (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954 (*McGill*); accord, *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 645 (*Meyer*).)

Section 1780, subdivision (a), provides, "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following:  [¶]  (1) Actual damages. . . .  [¶] (2) An order enjoining the methods, acts, or practices.  [¶] (3) Restitution of property.  [¶]  (4) Punitive damages.  [¶] (5) Any other relief that the court deems proper."  In addition, a prevailing plaintiff is entitled to attorney's fees and costs.

---

[11]    Valdez also alleged additional violations of section 1770, subdivision (a):  "(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.  [¶]  (3) Misrepresenting the affiliation, connection, or association with, or certification by, another . . . .  [¶]  (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  [¶] (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

13

(§ 1780, subd. (e) ["The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."].)

At least 30 days "prior to the commencement of an action for damages" under the CLRA, the consumer must provide written notice "of the particular alleged violations of Section 1770" and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." (§ 1782, subd. (a).)  Further, "no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." (§ 1782, subd. (b).)

C.    *Seidner's Offer Was Timely*

Valdez contends Seidner's correction offer was not timely because it was sent 32 days after Seidner received the CLRA notice.[12]  We agree with Seidner that its offer was timely because the time for it to make a correction offer fell on a Saturday.

It is undisputed Valdez sent his CLRA notice by certified mail on August 11, 2015, and Seidner received it on August 13. Pursuant to section 1782, subdivision (b), Seidner had to make a

---

[12]    Valdez also contends the draft settlement agreement was not a correction offer under the CLRA because it was labeled a draft settlement agreement, not a correction offer.  But there is no requirement in section 1782, subdivision (b), that a response to the required notice be identified as a correction, as long as the response provides "an appropriate correction, repair, replacement, or other remedy."

14

correction offer "within 30 days after receipt of the notice." The 30th day was September 12, 2015, which was a Saturday. Code of Civil Procedure section 12a, subdivision (a), provides that "[i]f the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day that is not a holiday."[13] A "holiday" is defined to include Saturdays (Code Civ. Proc. § 12a, subd. (a)) and Sundays (*id*., § 10).

Contrary to Valdez's contention, nothing in Code of Civil Procedure section 12a limits its application to business institutions and government offices that would be inaccessible on weekends. (See *DeLeon v. Bay Area Rapid Transit Dist.* (1983) 33 Cal.3d 456, 460 ["Consistent with the need for certainty in the method of computing time, a case will not be found to come under an exception to the general rule [under section 12a] unless there is a clear expression of provision for a different method of computation."]; *Ystrom v. Handel* (1988) 205 Cal.App.3d 144, 147-

---

[13] Code of Civil Procedure section 12a, subdivision (b), provides further, "This section applies to [all] provisions of law providing or requiring an act to be performed on a particular day or within a specified period of time, whether expressed in this or any other code or statute, ordinance, rule, or regulation." Valdez's reliance on *Steele v. Bartlett* (1941) 18 Cal.2d 573 is misplaced. The Supreme Court in *Steele* held that where a statute requires an act to be performed "not later than" a designated date, Code of Civil Procedure section 12a does not apply. (*Steele*, at p. 574.) However, the CLRA requires a business to make a correction offer "within" 30 days, falling squarely within Code of Civil Procedure section 12a's provision for acts that must be performed "within a specified period of time."

15

148 [rejecting contention that Code Civ. Proc., § 12a only applies to acts requiring access to a courthouse or other public office].)

Accordingly, Seidner made a timely correction offer under section 1782, subdivision (b), when its attorney sent the draft settlement agreement to Valdez's attorney on Monday, September 14, 2015.

D.     *Seidner's Offer Was Not an Appropriate Correction Offer Under the CLRA*

Valdez contends that by conditioning relief on release of claims not subject to the CLRA's prelitigation notice requirements and on compliance with other settlement terms, including Seidner's subjective approval of the vehicle's condition, Seidner's settlement offer was not an appropriate correction offer as contemplated by section 1782, subdivision (b).  We agree.

Seidner's draft settlement agreement contained a broad release of known and unknown claims, including an agreement that the parties release each other "from any and all past, present, and future claims, demands, causes of action, obligations, damages, injuries, liens, and liabilities, of any nature whatsoever, relating to or arising out of the Action."[14]  In addition to a release of claims, the draft settlement agreement contained a covenant not to sue under which the parties and their attorneys "agree never to commence or prosecute, nor voluntarily aid in the commencement of prosecution of any claims, demands, causes of action, obligations, damages, injuries, liens, and liabilities, of any nature whatsoever, against the other parties hereto . . . , which *arise out of or which related in any way* to any of the claims,

---

[14]     The draft settlement agreement defined "Action" as Valdez's "demand" in its CLRA notice to Seidner.

16

demands, causes of action, obligations, damages, injuries, liens, and liabilities which comprise the subject matter of this Agreement." (Italics added.)

This broad release language and covenant not to sue would have prohibited Valdez from asserting his section 1632, UCL, and fraud claims and his claim for injunctive relief under the CLRA. Yet Valdez had a right to bring those claims without first providing notice under the CLRA. As to a CLRA claim, a timely and appropriate correction under section 1782, subdivision (b), only bars a claim for damages, not injunctive relief. (§ 1782, subd. (b) ["no *action for damages* may be maintained under Section 1780" if an appropriate correction offer is made (italics added)] & subd. (d) ["An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)."];[15] *Meyer, supra*, 45 Cal.4th at p. 645 ["[S]ection 1782, subdivision (d) contemplates the filing of a CLRA action for injunctive relief alone, and such actions are not subject to the requirements of subdivisions (a) and (b) of notice and allowance for voluntary correction."]; *Flores v. Southcoast Automotive Liquidators, Inc.* (2017) 17 Cal.App.5th 841, 850 (*Flores*) ["An action for injunctive relief under section 1770 may be filed without sending a notice under section 1782, subdivision (a)."]; see *Gonzales v. CarMax Auto Superstores, LLC* (9th Cir. 2017) 845 F.3d 916, 918 [defendant's correction offer did

---

[15]     If a consumer files an action under section 1780 seeking only injunctive relief, he or she may amend the complaint without leave of court to seek damages after complying with the requirements for notice and a correction offer under section 1782, subdivisions (a) and (b). (§ 1782, subd. (d).)

not bar plaintiff's recovery of attorney's fees where plaintiff sought only injunctive relief for violation of the CLRA].)

Here, Valdez sought injunctive relief under the CLRA and UCL, prohibiting Seidner "from entering into lease agreements without providing appropriate translations, prior to execution, when negotiations are conducted primarily in a language other than English . . . ." Injunctive relief is available under both the CLRA and the UCL. (See *McGill, supra*, 2 Cal.5th at p. 955 ["public injunctive relief under UCL [and] CLRA . . . is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public"]; *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 316 [an injunction under the UCL "is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff"]; *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1080 ["[T]he evident purpose of the injunctive relief provision of the CLRA is not to resolve a private dispute but to remedy a public wrong."].) Because Seidner's draft settlement agreement did not provide the requested injunctive relief, it was not appropriate for Seidner to condition its correction offer on release of Valdez's claims for injunctive relief.[16]

In addition, as our colleagues in Division Five concluded in *Flores*, a "reasonable correction offer prevent[s] [the plaintiff] from maintaining a cause of action for damages under the CLRA, but [does] not prevent [the plaintiff] from pursuing remedies

---

[16] Contrary to Seidner's contention, the holding in *Benson* is not to the contrary. The court there declined to address whether the plaintiff could maintain an action for injunctive relief notwithstanding a CLRA correction offer because the parties did not brief the issue. (*Benson, supra*, 239 Cal.App.4th at p. 1213.)

18

based on other statutory violations or common law causes of action based on conduct under those laws." (*Flores, supra*, 17 Cal.App.5th at p. 850.)  As the *Flores* court observed, "plaintiffs routinely plead fraud, UCL, and CLRA claims based on similar allegations." (*Ibid.*)  Further, "[t]he remedies of the CLRA are cumulative of other rights." (*Id.* at p. 849.)  Section 1752 provides, "The provisions of this title are not exclusive.  The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any procedures or remedies for any violation or conduct provided for in any other law.  [¶]  . . . If any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law."

Here, Valdez asserted a claim for violation of section 1632, subdivision (b)(1), which provides in relevant part, "Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into [an agreement subject to the provisions of section 2985.7 (Vehicle Leasing Act)], shall deliver to the other party to the contract or agreement and prior to the execution thereof . . . a translation of every term and condition in that contract or agreement . . . ."  (See *Lopez v. Asbury Fresno Imports, LLC* (2015) 234 Cal.App.4th 71, 77 [when both parties use a foreign language to negotiate the transaction, § 1632 "prevents the seller from suddenly springing on the buyer a contract written in English and expecting the buyer to sign it without reviewing its terms"]; *Reyes v. Superior Court* (1981)

19

118 Cal.App.3d 159, 161 ["section 1632 provides certain contracts, leases, loans, and other agreements, if negotiated primarily in Spanish, must . . . be provided in Spanish translation"].) The Legislature enacted section 1632 "to increase consumer information and protections for the state's sizable and growing Spanish-speaking population." (§ 1632, subd. (a)(1).) Section 1632, subdivision (k), provides for rescission of the agreement as a remedy for a violation.

Valdez presented evidence the negotiations occurred in Spanish, but Seidner did not provide him with a Spanish language translation of the terms and conditions of the lease agreement. In response to Valdez's request for admissions, Seidner admitted "a Spanish translation of the subject contact was orally made to plaintiff before the plaintiff signed the document but inadvertently no written translated document or written Spanish language contract was provided to [Valdez]." Seidner's failure to provide a Spanish language translation of the lease agreement as required under section 1632 constituted a separate statutory violation, independent of the misrepresentations alleged as part of Valdez's CLRA claim.[17]

In addition, Valdez's UCL claim—based on violations of the CLRA and section 1632—was independently actionable. "The UCL addresses 'unfair competition,' which 'mean[s] and include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law].'" (*McGill,*

---

[17] Indeed, as Valdez conceded at the hearing, it does not appear the CLRA would have required a Spanish language translation. However, Valdez could seek injunctive relief under the CLRA as to the other alleged misrepresentations.

20

*supra*, 2 Cal.5th at p. 954; accord, *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) "By prohibiting unlawful business practices, "'section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the [UCL] makes independently actionable.'" (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980; accord, *Zhang*, at p. 370.) "In addition, a practice that is unfair or fraudulent may be the basis for a UCL action even if the conduct is 'not specifically proscribed by some other law.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1125 (*Loeffler*); accord, *Zhang*, at p. 370.) "'Actions for relief' under the UCL may be brought by various government officials and 'by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.' (Bus. & Prof. Code, § 17204.)" (*McGill*, at p. 954; accord, *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1265.) The UCL provides for injunctive relief, restitution, and civil penalties. (Bus. & Prof. Code, §§ 17203, 17206; *De La Torre*, at p. 179.)[18]

Relying on the Fourth Appellate District's decision in *Benson*, Seidner contends its correction offer barred Valdez's section 1632, UCL, and fraud claims because they were "inextricably intertwined" with his CLRA damages claim and added no value. (See *Benson, supra*, 239 Cal.App.4th at p. 1210.) In *Benson*, the plaintiff asserted claims against a car dealer under the CLRA, Automobile Sales Finance Act (ASFA; § 2981 et seq.), Vehicle Code, Song-Beverly Consumer Warranty Act (§ 1790 et seq.), and UCL, as well as for negligent and intentional

---

[18]    Although Valdez's fraud claims were based on the same misrepresentations alleged in his CLRA cause of action, the fraud claims were also separately actionable.

21

misrepresentations. (*Benson*, at p. 1204.) The plaintiff and car dealer settled the action but agreed to litigate whether the plaintiff was entitled to attorney's fees as a prevailing party under the CLRA in light of the dealer's prelitigation correction offer under the CLRA. (*Benson*, at pp. 1204-1205.) Although the Court of Appeal acknowledged the remedies under the CLRA are nonexclusive, it concluded the correction offer was appropriate because the non-CLRA claims "were 'inextricably intertwined with the CLRA claim and based on the same conduct,'" and "[s]ubstantial evidence supported the trial court's exercise of discretion in finding that the other claims had little or no independent value." (*Benson*, at p. 1210.)

As an initial matter, the court in *Benson* applied a deferential substantial evidence standard of review in the context of the plaintiff's request for attorney's fees. (*Benson, supra*, 239 Cal.App.4th at pp. 1207, 1210.) To the extent *Benson* may be read to hold that a business may condition its correction offer on a release of claims other than a claim for damages under the CLRA, we conclude otherwise. As the *Flores* court stated, a correction offer made under the CLRA does not bar a consumer from seeking remedies for violations of other statutes or under the common law based on conduct that violates those laws. (*Flores, supra*, 17 Cal.App.5th at p. 850; see *Loeffler, supra*, 58 Cal.4th at p. 1125 ["Like the UCL, CLRA remedies are not exclusive, but are 'in addition to any other procedures or remedies for any violation or conduct provided for in any other law.'"].)

Although *Flores* was decided in the context of an appeal of a judgment awarding the consumer damages for fraud and injunctive relief under the UCL following a CLRA correction

offer, the same reasoning applies to the analysis of whether a correction offer is appropriate under section 1782, subdivision (b). A correction offer cannot require the consumer to release claims that would not otherwise be barred under section 1782, subdivision (b). That is precisely what Seidner's proposed settlement agreement required by demanding Valdez release his section 1632, UCL, and fraud claims.[19]

To hold otherwise would lead to incongruous results. If Valdez had not asserted a CLRA claim for damages, he could have maintained his section 1632, UCL, and fraud claims because the claims were not subject to the notice requirement and provision for a voluntary correction under section 1782, subdivisions (a) and (b). Yet under Seidner's reasoning, once Valdez joined these claims with a CLRA claim for damages, all his claims were barred by a correction offer under section 1782, subdivision (b). This broad reading of the preclusive effect of section 1782, subdivision (b), is inconsistent with the Legislature's intent that the CLRA "be liberally construed and applied." (§ 1760; accord, *McGill v. Citibank N.A., supra,* 2 Cal.5th at p. 954.) In addition, Seidner's reading of section 1782, subdivision (b), as a bar to all Valdez's claims is contrary to the language in section 1752 that "[i]f any act or practice proscribed under this title also constitutes a cause of action in

_____

[19] We recognize many of the remedies available to Valdez under section 1632, the UCL, and for fraud were duplicative of the remedies available for violation of the CLRA. We do not suggest Valdez will be entitled to double recovery at trial; rather, he can pursue his claims under multiple statutes and common law, leaving the determination of appropriate remedies to the trial court at trial.

common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law."

Finally, Seidner's correction offer improperly allowed Seidner unilaterally to void the proposed settlement agreement if it determined after an inspection that the vehicle was in an unacceptable condition.[20] Valdez does not dispute that if he returned the vehicle with damage beyond normal wear and tear, Seidner would be entitled to an offset for the damage. But conditioning CLRA remedies on Seidner's subjective determination whether the vehicle was in an acceptable condition rendered Seidner's offer illusory. Thus, for this reason as well, Seidner's offer was not an appropriate correction offer under section 1782, subdivision (b). (See *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1049-1050 ["Because of the undefined and subjective nature of the term that [the dealer] would repurchase the 'undamaged' car, we conclude the section 998 offer was at least ambiguous, and was therefore not valid."].)

Seidner could have made an appropriate correction offer had it offered simply to refund Valdez's down payment and monthly payments, pay off the outstanding loan balance, and pay attorney's fees and costs. Although Valdez would still have been able to pursue his other claims, nothing would have prevented Seidner from attempting to negotiate a separate settlement of those claims. But Seidner's effort to exact additional concessions

_____

[20] The draft agreement provided, "[Valdez] shall return the Vehicle to [Seidner] as is, without damage or vandalism, save normal wear and tear and the alleged nonconformities. . . . If [Seidner] determines that the Vehicle is in unacceptable condition, it may void this Agreement in its entirety."

24

from Valdez as part of a global settlement ran afoul of sections 1752 and 1782, subdivisions (b) and (d), of the CLRA. Because Seidner did not make an appropriate correction offer, it failed to meet its burden of showing a complete defense to Valdez's claims to support the grant of summary judgment.[21]

## DISPOSITION

The judgment is reversed, and the matter remanded with directions to enter a new order denying Seidner's motion for summary judgment. Valdez is entitled to recover his costs on appeal.


FEUER, J.

WE CONCUR:


PERLUSS, P. J.


SEGAL, J.

---

[21] Because we conclude Seidner's draft settlement agreement was not an appropriate correction offer, we do not reach whether the agreement's provisions requiring confidentiality and denying liability independently rendered the offer inappropriate.