Filed 2/16/22  Solomon v. 404 N. Maple Dr. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| TATIANA SOLOMON, | B297996 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC684588) |
| v. | |
| 404 N. MAPLE DR., LLC et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed in part, reversed in part.

Tatiana Solomon, in pro. per., for Appellant.

Collins & Collins LLP, Edward J. Rifle, Christian E. Nagy and Bradley D. Doucette for Respondents.

———————————————

# INTRODUCTION

Tatiana Solomon[1] and her husband, Norman Solomon, sued their landlords and apartment managers, 404 N. Maple Dr., LLC, Standard Management Company and Samuel Freshman (collectively landlord defendants or defendants), for alleged defects in the Solomons' apartment, including the presence of mold and asbestos. On August 29, 2018 Norman Solomon dismissed his claims and the case proceeded with Tatiana Solomon as the remaining plaintiff.[2]

Solomon appeals the judgment entered against her following the trial court's order granting landlord defendants' motion for summary judgment or in the alternative summary adjudication as to each of the causes of action in Solomon's second amended complaint and her claim for punitive damages. We affirm the court's order granting summary adjudication regarding Solomon's claims for fraud, breach of contract, intentional infliction of emotional distress, violation of Business and Professions Code section 17200 and her demand for punitive damages. We reverse the judgment and reverse the court's order granting summary adjudication for Solomon's claims for negligence, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, nuisance, and constructive eviction because landlord defendants failed to demonstrate there was no material issue of disputed fact as to those five causes of action.

---

[1]    Tatiana Solomon also goes by the name Tatiana Vozniouk.

[2]    All further references to Solomon denote Ms. Solomon only.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Solomons Rent an Apartment from Landlord Defendants from 2008 to 2017*

In 2008 the Solomons signed a rental agreement to lease apartment unit 302, North Maple Drive, in Beverly Hills (the unit or unit 302).[3] The Solomons acknowledged in their rental agreement they had "examined the premises"; that the premises, including "all furnishings, fixtures, furniture, plumbing, heating, [and] electrical facilities" were "all clean, and in good satisfactory condition"; and that the Solomons were not aware of "damp or wet building materials . . . [or] mold contamination." The Solomons agreed to "keep the premises and all items in good order and condition" and "maintain the premises in a manner that prevents the occurrence of an infestation of mold in the premises." In November 2009 and again in November 2013 the Solomons renewed their lease. The two subsequent rental agreements contained the identical acknowledgements contained in the original 2008 lease.

On September 23, 2014 in response to a complaint by the Solomons that there was mold in their apartment, the Los Angeles County Department of Public Health (DPH) conducted an inspection of unit 302 and found a violation.[4] The inspection

---

[3] The facts are taken from the parties' declarations and exhibits the trial court considered during its evaluation of defendants' motion for summary judgment or summary adjudication. The facts are undisputed unless otherwise noted.

[4] Approximately one week later, on October 3, 2014, DPH conducted another inspection of the property. The record is unclear as to who requested this inspection and which units were

3

report noted a "microbial growth on the tile and grout in shower/bathtub" and that the areas should be cleaned and sanitized.

In response to the DPH report, defendants' maintenance person removed the shower doors and track from the Solomons' guest bathroom and cleaned and sanitized the area. On October 9, 2014 the Solomons sent a follow-up email to the property manager, Jane Hope, complaining the odor from the cleaning chemicals used by the maintenance person in the bathroom made the bathroom unusable. In that email the Solomons also made additional complaints, including that the dishwasher, washing machine, lights and light switches were not working properly; the guest bathroom toilet had rusted; there were holes in window screens; and there was still "bacteria-mold" in their unit. The Solomons stated "we didn't complained [sic] for all those years since all those problems started, but now we really would like to ask to fix it and to lower our rent. Just in several years from 31 hundred it's been raised to almost $4000. The apartment is not in a good condition, you witnessed it this morning."

In November 2014 a leak in the building roof caused a leak and water damage in the Solomons' master bedroom ceiling. Landlord defendants repaired the building roof in March 2015, but it is unclear what repairs, if any, defendants conducted in the Solomons' apartment prior to 2017.

---

inspected. The inspector identified two violations, one for suspected mold and another for "evidence of sewage flow in units . . . and in garage." The inspector noted plumbers were onsite at the time of the inspection, the sewage blockage was partially cleared, and "[c]lean-up [was] started in affected units and garage."

4

Between November 2014 and December 2016 the Solomons made many complaints to landlord defendants, primarily regarding their unit but also as to common areas of the apartment complex. These complaints included: repeated issues of mold growth in the guest bathroom; items stolen from unit 302 and from cars in the garage; locks in their unit needed to be changed; washing machine, refrigerator, dishwasher, breaker panel, balcony door, outlets, flooring, guest bathroom toilet, carbon dioxide detector and lobby lights needed to be repaired or replaced; landlord towed cars in garage without warning; and garbage was left in the garage for 10 days.

On February 22, 2017 there was another leak in the master bedroom ceiling of the Solomons' apartment. The next day defendants retained Executive Environmental to take material and air samples in the unit. Executive Environmental reported "No Asbestos-Containing Material" was identified during the inspection. The report noted the inspection was "limited to materials and locations affected by the recent water leak and anticipated to be impacted by the remediation/repair activity of the master bedroom in Unit 302, as directed by the client." On February 27, 2017 Hope sent the Solomons an email, attached the inspection report and stated unit 302 was "safe."

Around the same time, a neighbor informed Solomon of asbestos in unit 303, which was adjacent to Solomon's unit. On March 1, 2017 Solomon emailed Hope about this issue. Hope responded via email the same day stating, "There is no asbestos in your unit. That is all you need to know." Hope continued, "I am not at liberty to discuss anything that does not directly impact your apartment." Later that day, in response to further emails from Solomon, Hope wrote, "I neither confirmed nor

denied the existence of asbestos in 303; I merely provided a report stating that there was NO asbestos in YOUR apartment." Hope elaborated, "Apartment 303 has been properly cleared of a trace amount of asbestos . . . . The only reason it had to be removed was that ceiling repairs needed to take place." During this time landlord defendants provided the Solomons with a "Confidential Concession & Release of All Claims" regarding "Damp ceiling due to inclement weather conditions." The Solomons did not sign the release.

On March 8, 2017 DPH conducted an investigation "regarding hole in ceiling and mold in unit #302." The inspector found a violation for an unrepaired hole in the ceiling of the master bedroom and noted suspected mold on bathroom tiles in the bathroom. The report stated the inspector spoke with the property manager during the site visit, and the manager provided the inspector with a "mold testing report for unit #302 with negative results. The manager on site stated that the tenant was provided with mold testing report."

The following week the Solomons retained additional contractors to inspect their unit. Lead Tech Environmental (Lead Tech) conducted an inspection and issued a "Limited Asbestos Sampling Report" on March 16, 2017. The report noted trace amounts of asbestos in the ceiling drywall in the Solomons' master bedroom.

The same day Hope emailed Solomon. Apparently relying on the February 23, 2017 Executive Environmental report, Hope asserted, "The city does not require a permit when there is no asbestos. The asbestos report on your unit has been provided to the city." Hope also stated, "Only one bedroom is affected by the repairs so the rest of your unit is fully habitable."

On March 23, 2017 Nv Environmental conducted an inspection as requested by the Solomons. Nv Environmental collected samples to determine whether the Solomons' apartment had elevated moisture, water damage or mold. Nv Environmental' s written report noted several areas of concern in unit 302, including water damage and mold in the middle section of the master bedroom ceiling, surface mold on the shower tile in the guest bathroom and water damage under the kitchen sink. Nv Environmental determined a professional mold remediation company would need to remove a six-foot by four-foot section of the master bedroom ceiling to determine the scope of damage and necessary remediation. On March 29, 2017 a building inspector for the City of Beverly Hills emailed Solomon and said: "I spoke to the manager about the mold report you sent me, she will obtain the required permits for the remediation."

On April 6, 2017 landlord defendants sent the Solomons a letter stating that on March 24, 2017 they timely informed the Solomons that work on the master bedroom ceiling would begin on April 3, 2017 and the Solomons would need to vacate the apartment. According to the letter, the Solomons did not vacate their unit and refused to allow the contractors to enter. Construction on the Solomons' master bedroom ceiling began on approximately May 30, 2017. On June 2, 2017 defendants sent the Solomons a letter stating that, until the work was finished and the City completed its inspection, to "maintain the integrity of the containment area in the Premises ("Containment Area") . . . neither you nor any of your agents are authorized to enter the Containment Area." For approximately five of the following nights Solomon slept in her car in the apartment complex garage because she could not afford to stay in a hotel.

7

On June 8, 2017 defendants sent the Solomons a follow-up letter reporting that the repairs were complete, and "the unit is ready for you to return for occupancy." Landlord defendants informed the Solomons that because they were displaced for nine days, a credit of $1,320.03 would be applied to their July rent.

Wary of landlord defendants' assurances regarding the habitability of their unit, the Solomons retained Indoor Restore Environmental Services (Indoor Restore) to conduct further inspections for mold. Indoor Restore issued a report on June 13, 2017. The report found "fungal contaminates" on surface samples but no elevated levels of moisture. The report noted "[s]lightly elevated levels of fungal spores were found in [air] samples taken at the time of the inspection. Elevated levels of mold indicate a high likelihood of mold growth in the area tested at the time of the inspection."

On July 7, 2017 Executive Environmental sent a letter to landlord defendants summarizing its findings regarding mold levels in unit 302 as of June 12, 2017. Executive Environmental made numerous conclusions regarding the data, including: "No water damage species were identified in air samples in quantities that would suggest a hidden growth of mold or a potential health concern"; "indoor spore levels were significantly to well below the total levels measured outdoors"; "[t]he one species found to be higher [indoors] than the levels measured outdoors was Ascospores Species, which does not cause disease . . . [and is] indicative of a housekeeping issue"; and unit 302 "is safe to occupy from a mold exposure standpoint and does not pose a health hazard for the typical occupants."

On August 9, 2017 Executive Environmental issued an "Asbestos Work Monitoring Report" that summarized its

8

asbestos-related activities in unit 302 between May 30 and June 1, 2017. Executive Environmental reported that it "successfully completed the removal of 30 square feet of asbestos containing drywall ceiling material from the Southeast section of the Master Bedroom in Unit 302 . . . ." Indoor Restore conducted another inspection on November 1, 2017 and issued a report the same day. The report again found "fungal contaminates" on surface samples, but no elevated levels of moisture and no elevated levels of fungal spores in air samples.

On November 8, 2017, in response to a complaint regarding unit 302, DPH conducted another inspection of the premises.[5] The inspector identified three violations: an inoperable sink stopper in the guest bathroom; a large hole inside the cabinet under the kitchen sink; and "dark mold like substance around edge of bathtub, along the wall, inside main bathroom of Unit 302." Later that month the Solomons vacated their unit.

2. *The Solomons Sue Landlord Defendants*

On November 28, 2017 the Solomons filed this action against landlord defendants. The operative pleading is the second amended complaint, which the Solomons filed on June 18, 2018.

Solomon asserted landlord defendants, through their actions and omissions in responding to the defects in her rental unit, caused her to suffer emotional and physical harm, including difficulty breathing, asthmatic attacks, coughing, nausea, nose

---

[5]     The record contains additional DPH reports issued between 2014 and 2019 for other units in the building. Those reports are not directly relevant to the issues currently on appeal.

9

bleeds, migraines, skin lesions, exacerbation of her allergies and depression. Solomon sought various forms of relief for her claims, including compensatory and punitive damages.

On August 30, 2018 the trial court granted Solomon's attorney's motion to be relieved as counsel. Since that time, including in this appeal, Solomon has represented herself.

### 3. *Landlord Defendants Move for Summary Judgment or, in the Alternative, for Summary Adjudication*

On December 4, 2018 landlord defendants filed a motion for summary judgment or, in the alternative, for summary adjudication of all nine of Solomon's causes of action and for Solomon's claim for punitive damages. In support of their motion defendants filed a memorandum of points and authorities, numerous declarations, a separate statement of undisputed facts and a "compendium of evidence" comprised of 19 exhibits. Defendants argued each of Solomon's causes of action was unsupported by evidence and no triable issues of material fact existed as to any of Solomon's claims. Relying on select medical records from Solomon's treatment at the Venice Family Clinic, defendants also asserted that all of Solomon's alleged myriad mental and physical ailments were documented preexisting conditions and were unrelated to her tenancy in unit 302.[6]

In opposition to defendants' motion, Solomon contended there were numerous triable issues of material fact, including

---

[6] Defendants contend the Solomons are no longer married, and their divorce was a cause of Solomon's claimed emotional distress. Solomon asserts that she and Norman are still married. Solomon's marital status is irrelevant to the issues in this appeal.

how landlord defendants acknowledged or denied, and responded to or ignored, the mold and asbestos in her apartment. Solomon filed a declaration with 21 attached exhibits, including the March 16, 2017 Lead Tech asbestos report, the March 23, 2017 Nv Environmental mold report and approximately 90 pages of medical records. The medical records document Solomon's many medical visits from 2014 to 2017 to her family doctor, her psychologist and urgent care providers for various conditions, including skin lesions, dermatitis, allergies, mold exposure, headache, sore throat, cough, dizziness, nausea and vomiting, rash, depression, stress and anxiety. While Solomon suffered from some of these same health issues prior to moving into unit 302, both Solomon's primary care physician and her psychologist reported that her conditions were exacerbated by conditions at her building, including exposure to mold. Her psychologist said that Solomon's mental health had suffered due to "deteriorating physical conditions inside her apartment and increasingly, neglectful, abusive and harassing treatment by the on-site manager and by the ownership of her apartment building." Solomon also submitted declarations from friends who visited her during her tenancy. Many of them confirmed Solomon's complaints regarding her apartment, including smelling a musty odor and dampness, observing mold and having their own allergic reactions when visiting her unit (e.g., sneezing, coughing and eyes tearing).

Solomon also filed "Plaintiffs' Separate Statement of Undisputed Material Facts in Support of Their Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Summary Adjudication" (Solomon's separate statement). Notwithstanding the title, it appears that

Solomon intended this filing to either serve as her objections to defendants' separate statement of undisputed material facts, or her statement of disputed facts in opposition to defendants' motion for summary judgment. Although the substance of the filing suggests Solomon was objecting to defendants' evidence, she only used the word "object" once, and otherwise stated "Disputed," followed by an explanation why the evidence offered by the defendants was inaccurate; in each instance she referenced her declaration or specific exhibits as "supporting evidence" that there was a disputed factual issue.

In their reply landlord defendants argued they met their initial burden to establish the absence of a triable issue of material fact for each of Solomon's causes of action and the burden shifted to Solomon to demonstrate otherwise. Defendants claimed Solomon failed to meet her burden because she did not introduce admissible evidence to support her contentions. Landlord defendants objected to every paragraph of, and every exhibit referenced in, Solomon's declaration,[7] including statements and documents upon which they relied in support of their motion.[8] Defendants' objections were primarily based on

---

[7]    Solomon's declaration had 34 paragraphs. Landlord defendants made one objection for each paragraph, except paragraph 32, to which they made two objections. Landlord defendants also objected to Solomon's concluding statement on page eight of her declaration.

[8]    For example, in paragraphs two through four of her declaration, Solomon asserted she entered into a lease with landlord defendants in 2008, 2009 and 2013. Defendants objected to each of those paragraphs, asserting that Solomon failed to lay a proper foundation to authenticate those three

12

Solomon lacking the "requisite knowledge" to properly authenticate or otherwise lay the proper foundation for her exhibits.

### 4. *The Trial Court Grants Landlord Defendants' Motion for Summary Judgment*

On March 6, 2019 the court granted landlord defendants' motion for summary judgment or in the alternative summary adjudication on each cause of action in Solomon's complaint. The court sustained all or a portion of 23 of defendants' 36 evidentiary objections to Solomon's evidence in opposition to the motion. The evidentiary rulings resulted in the court "disregarding" nearly all the evidence submitted by Solomon, including the March 16, 2017 Lead Tech asbestos report and the March 23, 2017 Nv Environmental mold report. The court considered all evidence submitted by defendants, including the inspection reports and correspondence from Executive Environmental from February through August 2017.

In a section titled "Summary of Defects and Damages" the court explained, "Although Defendants' motion is organized by cause of action, Plaintiff's opposition is organized by habitability defect. Because all of Plaintiff's causes of action essentially arise from the same defects, the Court addresses the defects first, before turning to the causes of action." The court discussed Solomon's alleged defects in separate sections of the order titled: mold, asbestos, improper flooring, electrical problems and

rental agreements—the same rental agreements that defendants relied on to support their claims that Solomon inspected unit 302 and acknowledged that the unit was in good condition with no defects, including mold, prior to Solomon signing each of those leases.

13

termites. Regarding each of the alleged defects, the court considered the admitted exhibits and declarations provided by landlord defendants but did not consider Solomon's evidence or testimony (in the form of Solomon's declaration), in each instance sustaining defendants' objections and noting Solomon's evidence was "therefore disregarded." Based on that approach, the court concluded Solomon provided no admissible evidence to support her claims that her unit had any defects, including mold or asbestos.

The court took a similar approach to Solomon's claim for damages. The court relied exclusively on the small subset of Solomon's medical records, offered by landlord defendants, that indicated "Plaintiff identified her mental stressors as her divorce, her job, and her daughter going to college, without mentioning her apartment. Defendants also note that medical records indicate [Solomon] has had Hepatitis C, a preexisting skin condition, and allergies to trees, grass, weeds, and dander."

The court ruled all Solomon's causes of action were directly or indirectly premised on her allegations that unit 302 was fraught with defects. Because the court had already determined there were no triable issues of fact regarding any defects in unit 302, the court granted defendants' motion for summary adjudication on Solomon's causes of action for negligence, breach of the implied warranty of habitability, breach of covenant of quiet enjoyment, nuisance, violation of Business and Professions Code section 17200 and constructive eviction. The court also granted landlord defendants' motion for Solomon's remaining three causes of action for fraud, breach of contract, and intentional infliction of emotional distress. In addition to noting the absence of a triable issue of material fact for those three

14

claims, the court found there was no evidence that defendants' statements were knowingly false or that Solomon relied on the manager's statements (fraud); there was no evidence that landlord defendants knew there was mold at the time they entered into any of the rental agreements with Solomon (breach of contract); and no evidence that defendants engaged in outrageous or extreme conduct (intentional infliction of emotional distress).

Landlord defendants also moved to summarily adjudicate Solomon's claim for punitive damages. The court held, "This issue is moot in light of the Court's holding with respect to each cause of action asserted by Plaintiff." For "completeness" the court added that "the Court concludes there is no evidence suggesting Defendants knew about the mold or any other problem with the property, nor is there evidence that they deliberately refused to do anything about it."

The trial court entered judgment in favor of landlord defendants on March 25, 2019. Solomon timely appealed.

## DISCUSSION

1. *Standard of Review*

Summary adjudication is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c)[9]; *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1085.) " " "We review the trial court's decision

---

[9] All further undesignated statutory references are to the Code of Civil Procedure.

15

de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607 (*Valdez*).)

When a defendant moves for summary judgment in a situation in which the plaintiff at trial would have the burden of proof by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. Alternatively, the defendant may present evidence to "'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) "'""The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action."'" (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705; accord, *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 ["the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence'"].) "'"[S]ummary judgment cannot be granted when the facts are susceptible to more than one reasonable inference."'" (*Grossman*

*v. Santa Monica-Malibu Unified School Dist.* (2019) 33 Cal.App.5th 458, 465; accord, *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1180.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact"]; *Valdez, supra,* 33 Cal.App.5th 600 at p. 607.)  If the moving party satisfies this initial burden, the burden shifts to the opposing party to present evidence demonstrating there is a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar*, at p. 850; *Valdez*, at p. 607.)

> 2. *The Trial Court Erred in Granting Summary Adjudication of Solomon's Causes of Action for Negligence, Breach of the Implied Warranty of Habitability, Breach of the Covenant of Quiet Enjoyment, Nuisance and Constructive Eviction*
>
> a. *We consider only the evidence admitted by the trial court*

Landlord defendants objected to Solomon's declaration and all the exhibits she submitted in opposition to defendants' motion.  The court sustained most of these objections, leaving Solomon with very little documentation to support her claim that her unit was defective due to defendants' conduct and that she had suffered damages.

Conversely, all of defendants' evidence was admitted because Solomon failed to object to defendants' evidence in compliance with California Rules of Court, rule 3.1354, which requires written objections to evidence submitted in support of a summary adjudication motion to be presented in a specific format and served simultaneously with the opposition brief.  (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 764, fn. 6, citing

17

Evid. Code, § 353(a) [the objecting party must "make clear the specific ground of the objection"]; see also *Cole,* at p. 764 [failure to cite proper statutory authority in support of an objection or "make a coherent argument in support of the objection should be viewed as an abandonment of that objection"].) Instead of objecting, Solomon attempted to explain to the trial court that many of the statements contained in declarations or exhibits proffered by defendants were inconsistent with the exhibits she provided to the court; essentially, Solomon sought to show the trial court that there were numerous disputed issues of material fact.

The trial court granted nearly all the landlord defendants' objections to Solomon's evidence (including the reports from environmental contractors), primarily on the grounds of hearsay, lack of foundation or lack of authentication. The trial court considered the exhibits offered by defendants (including reports from environmental contractors), which similarly included hearsay and were not authenticated, because Solomon did not object to that evidence. Solomon also does not directly assert on appeal that the trial court erred in its evidentiary rulings. As a result, we must "consider all such evidence to have been properly excluded." (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015 [the failure to "challenge the trial court's ruling sustaining . . . objections to certain evidence" forfeits "any issues concerning the correctness of the trial court's evidentiary rulings"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].) We therefore only consider the admitted evidence in our review of the summary judgment motion.

18

(*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 529 ["A motion for summary judgment 'must be decided upon admissible evidence'"].)

> b. *There are triable issues of material fact for Solomon's claims for negligence, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, nuisance and constructive eviction*

The trial court found there were no "triable issues of fact as to any of the identified defects" in Solomon's unit. The court granted landlord defendants' motion for summary adjudication for Solomon's causes of action for negligence, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, nuisance and constructive eviction because each of those claims was premised on Solomon's unsupported allegations that her unit was riddled with defects. The trial court erred.

Landlord defendants did not meet their initial burden of showing the nonexistence of any triable issue of material fact regarding defects in Solomon's unit. The court concluded there was no mold or asbestos in unit 302, relying in part on defendants' exhibits D (the September 23, 2014 DPH inspection report), E (emails between Solomon and Hope in October 2014), I (the Executive Environmental asbestos inspection reports dated February 28, 2017, and August 9, 2017), and J (the July 7, 2017 Executive Environmental re-occupancy report). Although select portions of those exhibits read discretely could support a finding that there was no mold or asbestos in unit 302, the exhibits also contain evidence that could support contrary findings.

In Exhibit D, the DPH inspector reported, "Complaint investigation in unit #302 regarding mold in the unit. Violations observed." The inspector noted a "microbial growth on tile and grout in shower/bathtub" and directed that the area be cleaned

19

and sanitized.  In Exhibit E, Solomon told Hope that after defendants' maintenance person cleaned the area noted in the DPH report, the bathroom was unusable because the chemical smell made it difficult to breath, and there was still mold around the bathtub.  In Exhibit J, the Executive Environmental re-occupancy report included as an appendix the June 13, 2017 Indoor Restore "Mold Inspection Report."  The Indoor Restore report concluded that air samples taken at unit 302 showed, "Slightly elevated levels of fungal spores . . . .  Elevated levels of mold indicate a high likelihood of mold growth in the area tested at the time of inspection."  Indoor Restore also reported that, "Fungal contaminates were found on the [surface samples]" in unit 302.  For both the air and surface samples Indoor Restore warned that, "Some types of molds have species associated with an indoor environment are considered to be toxic and may cause serious health risks."

In Exhibit I, the August 9, 2017 Executive Environmental asbestos inspection report is replete with references to asbestos removal conducted in unit 302, including: "The scope of work involved the removal of 30 square feet of asbestos containing drywall ceiling material from the Southeast section of the Master Bedroom in Unit 302"; "after the abatement of asbestos-containing ceiling materials"; and "the contractor has successfully completed the asbestos abatement for this project."  In addition, Executive Environmental noted that asbestos abatement work in unit 302 was "limited to locations required for the mold remediation activity being conducted."

Based on the record before it, the court erred in granting defendants' motion for summary adjudication as to Solomon's claims of negligence, breach of the implied warranty of

20

habitability, breach of the covenant of quiet enjoyment, nuisance and constructive eviction because disputed issues of material fact exist regarding defects in Solomon's unit, including the presence of mold and asbestos.[10]

3. *The Trial Court Did Not Err in Granting Summary Adjudication of Solomon's Causes of Action for Fraud, Breach of Contract, Intentional Infliction of Emotional Distress, Violation of Business and Professions Code section 17200, and Solomon's Demand for Punitive Damages*

In their motion for summary adjudication, landlord defendants met their initial burden of making a prima facie showing that Solomon's claims for fraud, breach of contract, intentional infliction of emotion distress and violation of Business and Professions Code section 17200 lacked merit because there was no evidence to establish the required elements for each of those causes of action. Defendants asserted that they: did not make knowing misrepresentations to Solomon regarding defects in the apartment; neither knew nor should have had reason to know there was mold in unit 302 when they entered into the lease with Solomon in 2008, 2009 or 2013; did not engage in extreme and outrageous conduct with the intention of causing

_____

[10]     The trial court also concluded there was no triable issue of material fact as to other defects (including improper flooring, electrical problems and termites) alleged by Solomon. Because the landlord defendants did not meet their initial burden of establishing the nonexistence of any triable issues of material fact regarding some defects in Solomon's apartment, we do not reach the issue of whether there is a factual dispute as to every defect alleged by Solomon.

emotional distress to Solomon; and did not engage in any unlawful, unfair or fraudulent business practice. The burden then shifted to Solomon to identify evidence to demonstrate she could establish each of the required elements. (§ 437c, subd. (p)(2); *Aguilar*, *supra,* 25 Cal.4th at p. 850; *Valdez*, *supra,* 33 Cal.App.5th at p. 607.) Solomon failed to identify any admitted evidence that contradicted defendants' assertions. As Solomon was unable to establish a necessary element of each of these four causes of action, the trial court properly granted defendants' motion for summary adjudication on these claims.

The trial court also properly granted landlord defendants' motion for summary adjudication on the issue of punitive damages. In reviewing a summary adjudication ruling on a claim for punitive damages, "we view the evidence presented through the prism of the substantive clear and convincing evidentiary burden." (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1158; *Basich v. Allstate Ins. Co.* (2001) 87 Cal.App.4th 1112, 1121 ["[o]n a motion for summary adjudication with respect to a punitive damages claim, the higher evidentiary standard applies. If the plaintiff is going to prevail on a punitive damages claim, he or she can only do so by establishing malice, oppression or fraud by clear and convincing evidence"].) Here, Solomon did not point to any admitted evidence, let alone clear and convincing evidence, that defendants engaged in oppression or fraud or otherwise acted with malice toward her.

## DISPOSITION

The judgment is reversed. On remand, the trial court is to enter a new order granting defendants' motion for summary adjudication as to the causes of action for fraud, breach of contract, intentional infliction of emotional distress, violation of

22

Business and Professions Code section 17200 and Solomon's demand for punitive damages and denying the motion as to the causes of action for negligence, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, nuisance and constructive eviction.  The parties are to bear their own costs on appeal.


WISE, J.[*]


We concur:


PERLUSS, P. J.


FEUER, J.

---

[*]     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.