Filed 6/9/22  Ortiz v. City of Santa Clarita CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| SANDRA ORTIZ, | B301734 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC608663) |
| v. | |
| CITY OF SANTA CLARITA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Law Offices of Haik Beloryan and Haik Beloryan for Plaintiff and Appellant.

Burke, Williams & Sorensen, Brian I. Hamblet, Kane Thuyen and Rodolfo Aguado III for Defendant and Respondent.

————————————

Sandra Ortiz appeals from a judgment entered after the trial court granted the summary judgment motion filed by the City of Santa Clarita (City). Ortiz was hit by a vehicle while walking across the Sierra Highway in Santa Clarita at night after leaving a market alongside the highway. The location where Ortiz crossed was more than 400 feet from an unmarked crosswalk and 0.7 miles from a marked crosswalk. Ortiz sued the City for a dangerous condition of public property under Government Code section 835.[1]

On appeal, Ortiz contends there were triable issues of fact whether the location of Ortiz's accident was in a dangerous condition. Ortiz also argues in her supplemental briefing that she presented evidence showing the City knew or should have known the accident location constituted a dangerous condition in sufficient time to prevent the accident.[2] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Accident and Ortiz's Lawsuit*

At around 8:20 p.m. on March 3, 2015 Brandon Negron, who was driving southbound on the Sierra Highway in Santa Clarita,

---

[1] Further undesignated statutory references are to the Government Code.

[2] Following oral argument, we requested supplemental briefing on whether Ortiz submitted admissible evidence in opposition to the City's summary judgment motion sufficient to create a triable issue of fact that the negligent conduct of a City employee created the dangerous condition or the City had actual or constructive notice of the dangerous condition in sufficient time before the accident to have taken measures to protect against the condition.

struck and injured Ortiz, who was walking across the highway. Ortiz crossed the highway approximately 434 feet south of an unmarked crosswalk at Hillfield Lane and over 0.7 miles from a marked crosswalk at Adon Street.[3]  Several businesses lined the highway near the accident location, including the market and a pizzeria.  Ortiz was staying at a hotel located on the west side of the highway and crossed the street to buy something at the market on the other side of the highway.  She was returning with a bottle of water when she was struck by Negron's car.  Ortiz did not see Negron's car, describing the location of the accident as "very dark."

In January 2016 Ortiz filed a lawsuit against the City and Negron.  In her third amended complaint, Ortiz asserted a single cause of action against the City for a dangerous condition of public property, and against Negron for negligence.[4]  In her third amended complaint, Ortiz alleged she was trying to patronize the businesses located along the highway near the accident location. Because the only two available crosswalks were not within a reasonable distance of the businesses, she crossed the street

---

[3]     The Vehicle Code defines crosswalks to include both marked and unmarked crosswalks.  A crosswalk is "[a]ny portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."  (Veh. Code, § 275, subd. (b).) Alternatively, a crosswalk is "[t]hat portion of a roadway included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of such lines from an alley across a street."  (*Id*., subd. (a).)

[4]     Negron is not a party to this appeal.

3

without a crosswalk or traffic control device.[5] The nearest unmarked and marked crosswalks were approximately 434 feet and 0.7 miles, respectively, from where Ortiz crossed the street.

Ortiz alleged the location of the accident was public property in a dangerous condition because there was an absence of proper lighting to illuminate the highway; there was no sign to direct drivers to reduce their speeds or warn them of pedestrians crossing the highway; there were no traffic lights or proper signage at the closest intersections; there were no nearby crosswalks that would allow pedestrians to safely patronize the businesses on the other side of the highway; and the City failed to maintain a "large city tree" that prevented the closest street light from illuminating the highway at the accident location.

B.      *The City's Motion for Summary Judgment*

On April 5, 2019 the City filed a motion for summary judgment, or in the alternative, for summary adjudication of six issues. The City argued it was immune from suit for a dangerous condition under section 830.4, which provides immunity for a city's "failure to provide regulatory traffic control signals, stop signs,

---

[5]      Vehicle Code section 440 provides an "'official traffic control device' is any sign, signal, marking, or device, consistent with Section 21400, placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, but does not include islands, curbs, traffic barriers, speed humps, speed bumps, or other roadway design features." Vehicle Code section 21400, subdivision (a), in turn, includes as examples of official traffic control devices, "stop signs, yield right-of-way signs, speed restriction signs, railroad warning approach signs, street name signs, lines and markings on the roadway . . . ."

4

yield right-of-way signs, or speed restriction signs," as described in the Vehicle Code. The City asserted its immunity included its alleged failure to provide crosswalks, stop signs, and traffic signage at the accident location. The City also argued Ortiz's claim that the City failed to maintain its tree at the accident location was barred by the Government Claims Act because Ortiz failed to reference the tree in her claim filed with the City.

The City contended Ortiz failed to establish the elements of a claim for a dangerous condition of public property because under section 830.2, a condition is not a dangerous if "no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." The City pointed to the absence of prior or subsequent accidents at the accident location, relying on the declaration of City traffic engineer Gus Pivetti, who was responsible for monitoring traffic collision patterns in the City. According to Pivetti, the City maintains a database containing all reports from the sheriff's department of collisions within the City. Pivetti attached the collision history report for the portion of Sierra Highway between Hillfield Lane and Adon Street (exhibit I to the City's compendium of exhibits). Pivetti averred that other than the accident involving Ortiz, "there is no record or evidence of any automobile collision at the Subject Location between March 3, 2010 to March 3, 2015." He added that the three accidents other than the one involving Ortiz reflected in exhibit I "were not near the Subject Location."

The City asserted there was no evidence the lack of lighting or traffic control devices, or the failure to maintain the tree, proximately caused Ortiz's injuries. The City pointed to Ortiz's testimony that nothing blocked her view of the highway or vehicles

5

travelling on the highway, and Negron's testimony that he did not recall a tree blocking his view. Instead, Negron collided with Ortiz because it was dark, Ortiz was wearing dark clothing, and she was moving quickly. In addition, the City argued Ortiz did not act with due care because she was impaired by the consumption of alcohol while jaywalking across the highway at night wearing dark clothing. The City cited Ortiz's testimony that she drank a "big can" of beer at approximately 4:00 p.m. on the night of the accident.

The City argued further it did not have notice of a dangerous condition at the accident location, relying on section 835, which requires the plaintiff to prove the dangerous condition was created by a negligent or wrongful act or omission of a city employee within the scope of employment, or the city had actual or constructive notice of the dangerous condition in sufficient time to have taken measures to protect against the dangerous condition. The City submitted the declaration of Joseph Oerum, clerk and contract services manager for the City, who stated he had reviewed the City's reporting system (the "CRM" system) for complaints of accidents or dangerous conditions at the accident location, and there were no reports of traffic accidents, potentially dangerous conditions, or complaints about trees, lighting, or signage at the accident location prior to March 3, 2015. Oerum submitted with the City's motion the reports from the City's CRM system for the stretch of Sierra Highway between Hillfield Lane and Adon Street. The attached reports show complaints related to sidewalks, street potholes, and a resurfacing project at specific locations other than the accident location.

The City also argued it was not liable for conduct by third parties (the businesses) that may have caused a defective condition of the City's property, or Ortiz's failure to comply with

6

the law by crossing in the middle of the block instead of at a crosswalk. Finally, the City argued the exception to immunity for a hidden traffic "trap" under section 830.8 did not apply.

In her opposition, Ortiz argued the accident location was in a dangerous condition because the nearest crosswalk was over 400 feet away from the businesses, and thus it was reasonably foreseeable that pedestrians would cross the street between the crosswalks; there was no street lighting near the accident location, and to the extent there was, it was blocked by a large unmaintained tree that caused the location to be dark; and there were no posted signs warning motorists that pedestrians may cross the highway. Ortiz submitted her deposition testimony in which she stated it was "so dark that night, [she did not] see any car," and that she looked to her right and did not see anything because it was "very, very dark." Negron testified that it was "pretty dark" on the road, "very dark . . . compared to the rest of Santa Clarita," and that even with his headlights on, he "barely" saw Ortiz before the impact.

Ortiz argued the City was aware of the dangerous condition at the accident location because at least six pedestrians were struck by vehicles while crossing the Sierra Highway at night "at or near where the incident occurred" within two years of the incident, and one of the pedestrians died. In making this argument, Ortiz relied on exhibit C of her compendium of exhibits, which showed six collisions involving pedestrians from 2010 to 2015 (including the one involving Ortiz). Further, in 2016 (after the accident), three pedestrians were killed at night while crossing the street at or near the accident location. Ortiz pointed out that exhibit C also showed that between 2001 and 2004, five pedestrians were hit, and three were killed. Ortiz submitted Pivetti's testimony as to exhibit C that subsequent to Ortiz's

7

accident, he conducted a "safety review" of past collisions that occurred on Sierra Highway within a two-mile radius of the accident location.

Ortiz also asserted the court should consider the City's installation of 76 street lights near the accident location following Ortiz's accident as a result of Pivetti's safety review, which cost somewhere from $10,000 to $20,000. Based on his safety review, Pivetti and others "made a recommendation for street lighting." Pivetti added that as part of his review, he saw "an occurrence of nighttime-related collisions and some involving pedestrians." The installation of street lights near the accident location was done "[t]o enhance safety, to help mitigate an issue we determined."

In support of her opposition, Ortiz submitted the declaration of Edward Ruzak, a professional civil and traffic engineer. Ruzak based his opinions on the deposition testimony, declarations, and documents submitted in connection with the City's summary judgment motion, and the parties' discovery responses. He stated the accident location was approximately 434 feet south of Hillfield Lane and over 0.7 miles from a marked crosswalk. Because of the distance, "it would be reasonably foreseeable to any traffic engineer that most pedestrians would essentially cross the street without utilizing marked crosswalks to patronize these businesses [on the other side of the highway]." Further, there was "no continuous arterial street lighting along Sierra Highway proximate to the crash site," and "[w]hatever street lighting that did exist near the accident site appears to be blocked by unmaintained trees immediately next to the lamp post preventing it from serving its function and illuminating the street."

Ruzak opined that "[m]otorists traveling during periods of darkness without the benefit of arterial street lighting and exercising due care by driving at or even slightly above the 45-mph

8

speed limit would have difficulty seeing pedestrians crossing Sierra Highway." He concluded to a reasonable degree of engineering certainty that the accident location "constituted a dangerous condition because of the roadway conditions/lack of pedestrians warning signs and lack of arterial street lighting . . . ." Ruzak also opined that the five pedestrian collisions (with three fatalities) from 2001 through 2004 and nine evening collisions (with four fatalities) from 2013 to 2016 reflected in exhibit C "should have prompted the City of Santa Clarita to install arterial streetlighting in this section" of the highway. Therefore, the City knew or should have known the accident location constituted a dangerous condition.

Ortiz also argued the City did not have immunity under section 830.4 for the dangerous condition caused by the City's failure to maintain a large tree near the accident location that blocked the illumination from a street light. In support of this argument Ortiz submitted four Google Maps photographs (exhibit E) that she described in her compendium of exhibits as showing a tree blocking the street light. The photographs show a large tree on the side of a street and indicate at the bottom they were taken near Sierra Highway and Hillfield Lane. Ortiz also relied on four other photographs (exhibit O), which Pivetti testified were aerial photographs taken from the City's database of a tree near the accident location. It is not clear from either set of photographs whether the tree at the accident location was obscuring a street lamp.[6] In addition, Ortiz submitted as exhibit F three

---

[6] Ortiz also submitted two photographs (exhibit P) she described in her compendium of exhibits as depictions of a tree blocking a street light taken at the accident location by Daniel Wurangian (an employee of Ortiz's attorney). The trial court

9

photographs that she described as "Google Satellite Images" depicting the accident location after the City trimmed the trees and installed new traffic lights. Ortiz's attorney, Haik Beloryan, described the exhibits in his declaration and stated he downloaded the Google satellite images.

The City filed a reply brief and objections to Ortiz's evidence, including the photographs of trees marked as exhibit F, and the City's cost estimates for installation of additional lighting, marked as exhibit J. The City also objected to the portion of Beloryan's declaration purporting to authenticate the photographs and satellite images and the Ruzak declaration.

C.    *The Trial Court's Ruling and Entry of Judgment*

After a hearing, on July 25, 2019 the trial court granted the City's summary judgment motion. The court sustained the City's evidentiary objections to Ortiz's exhibits F (Google satellite images showing trimmed trees post-accident) and J (City's cost estimates for street lights). The court overruled the City's objections to the Ruzak declaration.

The court found the City met its burden on summary judgment to show it was not liable for a dangerous condition of property in light of its immunity under section 830.4 for any failure to install crosswalks, traffic signs, or other traffic control devices, and the City was under no obligation to provide street lighting in the absence of a "peculiar condition" making lighting necessary. Likewise, Ortiz failed to meet her burden to show a triable issue of fact based on the distance to the nearest crosswalk and lack of traffic signs and control device. Nor did Ortiz present

---

sustained the City's objection to these photographs, and Ortiz does not rely on the photographs on appeal.

admissible evidence that an unmaintained tree blocked the street light near the accident location.

The trial court also rejected Ortiz's argument she showed a dangerous condition based on the City's record of vehicle collisions with pedestrians because Ortiz failed to show how the "accidents were similar to the events in the instant action, or how the occurrence of these accidents indicate that the Sierra Highway at the location [Ortiz] was struck constituted a dangerous condition."

Similarly, the trial court found evidence of the City's subsequent installation of street lights as a remedial measure was inadmissible to show the accident location was in a dangerous condition prior to the accident, observing the evidence was not submitted for a proper purpose, such as to show ownership of the highway or the feasibility of installing street lights, neither of which was disputed. The court did not address whether the City was on notice of a dangerous condition at the accident location.

On August 21, 2019 the trial court entered judgment in favor of the City. Ortiz timely appealed.

## DISCUSSION

A.   *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1085.) "'''"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the

11

evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'"'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Valdez v. Seidner-Miller, Inc., supra,* 33 Cal.App.5th at p. 607.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Valdez*, at p. 607.) We must liberally construe the opposing party's evidence and resolve any doubts about the evidence in favor of that party. (*Regents, supra*, 4 Cal.5th at p. 618; *Valdez*, at p. 608.)

B.    *The Trial Court Did Not Err in Granting Summary Judgment*
       1.    *Governing law*
"Under the Government Claims Act, '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.'" (*Hampton v. County of San Diego, supra*, 62 Cal.4th at p. 347, quoting § 815, subd. (a);[7] accord, *Guzman v. County of Monterey*

_____

[7]    Section 815, subdivision (a), provides that, except as otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

12

(2009) 46 Cal.4th 887, 897 ["there is no common law tort liability for public entities"].) Ortiz alleges a single cause of action against the City for dangerous condition of public property under section 835. Under section 835, a public entity's liability for the foreseeable risk of injury arising from a dangerous condition of its property is limited to specified circumstances, including when "either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition in time to have taken preventive measures."[8] (*Hampton,* at pp. 347-348; accord, *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66.) "A dangerous condition is one that 'creates a substantial . . . risk of injury' when the property is 'used with due care in a manner in which it is reasonably foreseeable that it will be used.'" (*Hampton,* at p. 348; accord, *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532, 539.)

Under section 835.2, subdivision (a), a public entity has actual notice of a dangerous condition "if it had actual knowledge of the existence of the condition and knew or should have known of

_____

[8]    Section 835 provides that "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶]  (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or  [¶]  (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

13

its dangerous character." Under section 835.2, subdivision (b), a public entity has constructive notice of a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."

>    2. *Ortiz did not present admissible evidence to create a triable issue of fact that the City knew or should have known the accident location posed a dangerous condition*

Ortiz argued in her opening and reply briefs that the trial court erred in granting summary judgment because Ortiz presented evidence to create a triable issue of fact whether the accident location constituted a dangerous condition.[9] In response

---

[9] Ortiz did not argue in her opposition to the City's summary judgment motion, nor has she argued in her opening, reply, or supplemental opening brief that a City employee acted negligently in creating a dangerous condition. She has therefore forfeited this contention. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [""""Issues not raised in an appellant's brief are [forfeited] or abandoned.""""]; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555 [same]; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 972 [""""[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.""""].) In her supplemental reply brief, Ortiz argued against forfeiture on the basis she had shown the City's negligence caused the dangerous condition based on the City's poor maintenance of the city tree that blocked the light pole, the City's control of the street where the accident occurred, and the City's ownership of the traffic markings and traffic controls on the highway. However,

14

to our request for supplemental briefing, Ortiz contended (1) the City had actual or constructive notice that an overgrown tree blocked the sole street lamp at the accident location; (2) the City had actual or constructive notice of the pattern of pedestrians being injured or killed by vehicles at night near the accident location; (3) the City had actual or constructive notice that the closest marked crosswalk was .7 miles from the accident location, requiring a pedestrian to walk two miles to use the crosswalk to reach the businesses across the street; and (4) the City had constructive notice of the poor street lighting as shown by the addition of 76 street lamps after the accident. We do not reach whether the accident location constituted a dangerous condition because, even assuming it did, Ortiz did not meet her burden to show a triable issue of fact that the City had actual or constructive knowledge of a dangerous condition.

The City met its initial burden in moving for summary judgment to show it had no actual or constructive notice of a dangerous condition at the accident location. According to Oerum, the City's database did not reflect any complaints or reports of dangerous conditions at the accident location prior to the accident, including vehicle collisions, overgrown trees, lighting, or signage. Ortiz testified in her deposition that she did not notify the City of a dangerous condition at the accident location prior to the accident, nor was she aware of anyone else who did. And Pivetti stated in his declaration as to the City's record of collisions on the Sierra Highway in the 0.22 mile portion near the accident location (exhibit I) that there was no record of vehicle collisions from March 3, 2010 until Ortiz's accident in 2015, noting the three accidents

Ortiz failed to present any evidence of a City employee's conduct that created a dangerous condition at the accident location.

15

during the period other than Ortiz's accident "were not near the Subject Location."

Thus, the burden shifted to Ortiz to present evidence to create a triable issue of fact as to actual or constructive notice of a dangerous condition. She did not meet her burden.

> ### a. *Ortiz did not present admissible evidence the City had actual or constructive notice that an overgrown tree blocked the sole street lamp at the accident location*

Ortiz contends the City was on actual notice of the overgrown tree that blocked the only street lamp at the accident location based on Pivetti's testimony he drove by the area on a daily basis prior to the accident. Ortiz points to the aerial photographs produced by the City of the tree that Ortiz asserts was blocking the only street lamp at the accident location. However, the aerial images of a large tree at the accident location on which Ortiz relies (exhibit O) do not support Ortiz's assertion that the photographs "show how the branches of the subject tree were overgrown and blocking the one street pole that existed within a 2-mile stretch where the subject incident occurred." The photographs at most show a large tree on the sidewalk near the accident location casting a shadow on a portion of Sierra Highway during the daytime, not that the tree blocked the nighttime illumination from the closest street lamp. Further, Pivetti's testimony that he had "driven on Sierra Highway in that area prior to this incident" does not show, as argued by Ortiz, that Pivetti had driven on Sierra Highway at night or had observed an overgrown tree blocking illumination of the highway by a street lamp at the time Pivetti drove by the accident location.

16

Ortiz also asserts that following the accident the tree was removed, which shows the City's actual or constructive knowledge the tree created a dangerous condition for pedestrians. However, the evidence shows that in March 2018 it was determined during "grid trimming" that "the tree was going to be proactively removed as it was starting to lit a utility box." The tree was later removed on January 7, 2019 in response to a resident's complaint that the tree "will fall into the street." In no way does the removal of the tree in 2019 create a triable issue of fact that prior to the accident in 2015 the City was on notice the tree was blocking illumination from a street lamp on Sierra Highway that created a dangerous condition.

> b. *Ortiz did not present admissible evidence the City had actual or constructive notice of similar motorist-pedestrian accidents near the accident location*

Ortiz argues exhibit C supports her argument the City was on actual notice that the accident location was in a dangerous condition. Ortiz points to the six collisions involving pedestrians from 2010 to 2015 (including Ortiz's accident), five collisions from 2001 to 2004, and three pedestrian accidents in 2016. Ortiz's contention lacks merit because Ortiz failed to present evidence the accidents were substantially similar to Ortiz's accident to place the City on notice of a dangerous condition.

Evidence of previous accidents can be used to prove the existence of a dangerous condition if "'it [is] first . . . shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.'" (*Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 138 [evidence of prior accidents at intersection not admissible to prove existence of dangerous condition where prior accidents

17

involved dissimilar vehicle collisions, and single prior motorist-pedestrian collision occurred in daylight three years prior to nighttime accident injuring plaintiff]; accord, *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1072 [trial court did not err in excluding evidence of 23 collisions near the location in which plaintiff was injured by a vehicle where none of other accidents involved pedestrians]; *Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1482 ["The trial court has discretion to admit evidence of prior accidents where the conditions existing at the time of the respective accidents are shown to be similar."].)  "'While there must be substantial similarity to offer other accident evidence for any purpose, a stricter degree of substantial similarity is required when other accident evidence is offered to show a dangerous condition; "'the other accident must be connected in some way with that thing . . . .'"'" (*Mixon*, at p. 138; *Sala*s, at p. 1072.)

Ortiz failed to submit any evidence to show the accidents reflected on exhibit C occurred near the accident location or were substantially similar to Ortiz's accident.  The only information exhibit C provides is that the collisions occurred within two miles of the accident location from 6:00 p.m. to 6:00 a.m.  Moreover, the detailed summary of collisions during the period from March 3, 2010 to March 3, 2015 (exhibit I) shows the collisions were not substantially similar.  Exhibit I shows a 2010 accident in which a vehicle hit a "fixed object" at an "unsafe speed" and notes the driver was "sleepy" and "fatigued." (Capitalization omitted.)  The 2012 accident involved two vehicles, one of which was making a left turn.  And a 2013 accident involved a motorist who had a "physical impai[rment]," and the vehicle crossed into the opposing lane and hit an object.  (Capitalization omitted.)  Negron's collision

with Ortiz was the fourth collision. Ortiz did not show the other collisions on exhibit C were substantially similar to her accident.[10]

> c. *Ortiz did not present admissible evidence the City had actual or constructive notice of a dangerous condition based on the lack of a nearby marked crosswalk or crossing signs*

Ortiz contends the City owned the portion of the Sierra Highway at the accident location since 1984, and thus it had actual knowledge of the dangerous condition of the accident location, including the distance to the closest marked crosswalk and the lack of crossing signs. However, Ortiz presented no evidence to show the City had actual or constructive notice of a dangerous condition created by the distance from the accident location to the nearest crosswalk. When Pivetti was asked at his

---

[10] Ortiz also relies on Ruzak's opinion that the City should have performed a safety review of the accident location given the "alarming" number of motorist-pedestrian collisions within two miles of the accident location. Ruzak opined the City "knew, or in the exercise of due diligence, should have known" the accident location was dangerous because the City would have been aware of the significant number of nighttime motorist-pedestrian collisions within a two-mile radius of the accident scene from 2001 to 2016, which should have prompted the City to conduct a safety review prior to Ortiz's accident. However, Ruzak's conclusion is based only on exhibit C, which did not provide any information on the location (or nature) of the collisions. Ruzak does not address exhibit I, showing that from 2010 until Ortiz's accident in March 2015 there were no motorist-pedestrian collisions within 0.22 miles of the accident location. Although the trial court overruled the City's objections to the Ruzak declaration, Ruzak's opinion the City should have been on notice of the dangerous condition of the accident location has no foundation, and thus cannot create a triable issue of fact.

19

deposition whether he was aware it would take 20 minutes to walk from the accident location to the nearest crosswalk, Pivetti responded that he was not. Pivetti added, "I had no reason to assume there was a problem there." Further, Pivetti testified that Ortiz crossed at a location that did not give her the right of way under the Vehicle Code to cross the highway because she should have crossed at an intersection (Adon Street or Hillfield Lane).[11] When asked whether most people would tend not to cross at an intersection that is not close to the desired location, Pivetti responded, "We expect people to abide by the law . . . and behave appropriately." Further, even if the City was aware that the accident location was 0.7 miles from the marked crosswalk and had no crossing signs, Ortiz failed to present evidence the City was on notice these conditions rendered the location dangerous. As discussed, Ortiz's reliance on exhibit C does not assist her because exhibit C only showed there were motorist-pedestrian accidents somewhere within two miles of the accident location, not at the accident location.

Ortiz also argues the City must have been aware of the dangerous condition of the accident location because after Ortiz's accident the City installed 76 new street lights to "enhance the safety" of motorists. But evidence of the installation of additional street lights following the accident is not admissible to show the City had actual or constructive notice prior to the accident. Section 830.5, subdivision (b), provides, "The fact that action was taken after an injury occurred to protect against a condition of

---

[11] Vehicle Code section 21955 provides, "Between adjacent intersections controlled by traffic control signal devices or by police officers, pedestrians shall not cross the roadway at any place except in a crosswalk."

public property is not evidence that the public property was in a dangerous condition at the time of the injury."  Evidence Code section 1151 similarly provides, "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event." (See *McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 667 ["Section 1151 excludes evidence of a defendant's subsequent remedial measures to prove 'negligence or culpable conduct.'"].)  Section 1151 "'does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.'" (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1169; accord, *McIntyre*, at p. 673.)  However, there is no dispute here as to the City's ownership and control of the Sierra Highway at the accident location, nor is there a dispute as to whether it was feasible to install additional lighting at the location.

Moreover, the installation of additional street lighting after the accident does not show the City had knowledge of poor lighting at the accident location prior to the accident.  As Pivetti testified, he and others suggested the installation of additional street lights in the two-mile stretch of the Sierra Highway after Pivetti conducted a safety review in 2016 that looked at nighttime collisions between vehicles and pedestrians within a two-mile stretch of the Sierra Highway.  As discussed, Ortiz did not present any evidence the City knew—or had a reason to know—the lack of additional street lights at the accident location (as opposed to within a two-mile radius) created a dangerous condition.

21

## DISPOSITION

The judgment is affirmed.  The City is entitled to costs on appeal.


FEUER, J.

We concur:


SEGAL, Acting P. J.


IBARRA, J.*

---

\*      Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.